UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**PROGRESSIVE SPECIALTY INSURANCE COMPANY,**
    Plaintiff,

v.

**RICKIE ALEJANDRO ROBLES, et al.,**
    Defendants.

Case No. 4:22-cv-566-CLM

## MEMORANDUM OPINION

Two cars collided at 4:10 a.m., leaving one car disabled in the middle of the road. Six minutes later, a third car struck the disabled car. The issue before the court is whether these events constitute a single accident, or two separate accidents. Because the court finds that these collisions constitute two separate accidents, the court **DENIES** Progressive Specialty Insurance Company's motion for summary judgment (doc. 15).

### I.     FACTS

Progressive Specialty Insurance Company ("Progressive") filed this declaratory judgment action to determine the amount of insurance limits applicable to certain automobile collisions.

**A.     The Collisions**

On May 10, 2021, at around 4:00 a.m., Rickie Robles ("Robles") was driving a 2004 Kia northbound on County Road 51 in DeKalb County, Alabama. As Robles approached the intersection of County Road 51 and County Road 483 at 4:10am (according to the accident report), a vehicle driven by Cranston Noojin ("Noojin") pulled westbound from a stop sign on County Road 483 and into the path of Robles, causing a collision.

The collision disabled Robles' Kia, which came to rest in the middle of County Road 51. Robles remained inside.

1

Witness Robert Gorham ("Gorham") arrived at the intersection a short time later and pulled his truck to the side of the disabled Kia so that his lights could shine south on County Road 51.

At 4:16 a.m. (according to the second accident report), a vehicle driven by Gary Wayne Bell ("Bell") traveling northbound on County Road 51, collided with the disabled Kia.

Gorham first described the passage of time between the Noojin and Bell collisions as 7 to 8 minutes. (Doc. 15-2, p. 15:10). He later said that the interval was shorter than he realized. (Doc. 15-2, p. 65:11-19). The accident reports state that the first collision occurred at 4:10 a.m., and the second collision occurred at 4:16 a.m. (*See* Docs. 15-3, p. 2, 15-4, p. 2).

Robles suffered serious injuries in the accident. Noojin perished.

**B.   Insurance Policies & Settlements**

At the time of the May 10, 2021 accidents, there were four potentially relevant insurance policies: two issued by Allstate Insurance Company, and two issued by Progressive.

First, Noojin was insured by Allstate Insurance Company under a liability policy which afforded $50,000 in liability limits ("Noojin Policy").

Second, Bell was insured under a liability policy issued by Progressive, which afforded combined single limit liability insurance of $500,000 ("Bell Policy").

Third, Robles was insured under a policy issued by Allstate Insurance Company. The policy insured two vehicles. The Kia policy provided the sum of $50,000 in stacked underinsured motorist coverage ("Kia Policy").

Lastly, Progressive issued an insurance policy to Brian C. Bishop. ("Bishop Policy"). The applicable stacked coverage under the Bishop Policy is $75,000.[1] Robles claims to have been a resident of the household and a relative to Brian C. Bishop at 1532 County Road 345, Attalla, AL 35954 at the time of the accident, making him eligible, if true, to seek uninsured/underinsured

---

[1] An insured under a multi-car policy may "stack" the primary coverage and up to two additional coverages. Ala. Code. § 32-7-23(c).

motorist coverage available under the Progressive policy, subject to the terms and conditions of the policy and the law of Alabama.

The Bishop Policy provides in part:

> PART III—UNINSURED/UNDERINSURED MOTORIST COVERAGE
>
> **LIMITS OF LIABILITY**
>
> The limit of liability shown on the **declarations page** for Uninsured/Underinsured Motorist Coverage is the most **we** will pay regardless of:
>
> 1. claims made;
> 2. **insured persons**;
> 3. lawsuits brought;
> 4. vehicles involved in the accident; or
> 5. premiums paid.

(Doc. 1-2, p. 19) (emphasis in original).

After the accident, Robles presented a claim to Allstate Insurance Company related to the liability insurance available to Noojin under the Noojin Policy. He also claimed all available underinsured motorist coverage under the Kia Policy issued by Allstate.

Allstate tendered the full liability and underinsured motorist coverages under both policies (the Noojin Policy, and the Kia Policy, respectively) in proposed settlement of all claims.

Once the liability limits were tendered by Allstate under the Noojin Policy, Robles, in a letter dated November 22, 2021, and under the protocols set forth in *Lambert v. State Farm*, 576 So. 2d 160 (Ala. 1991), placed Progressive on notice of the tender, and gave Progressive a chance to either advance the tender, or consent to settlement with Noojin.

The letter stated: "[t]o be clear, I contend that the negligence of Cranston Noojin and the negligence of Gary Wayne Bell combined and concurred to cause the damages and harm that Rickie suffered and continues to suffer." (Doc. 15-6, p. 2). It was clear to Progressive that Robles considered the accidents to be

two separate and independent occurrences, which correspondingly triggered two separate and independent underinsured motorist exposures under the Bishop Policy, one related to the Noojin liability coverage, and another related to the Bell liability coverage.

On January 26, 2022, Progressive's counsel responded and notified Robles of its consent and waiver to the Noojin settlement. Progressive explained, however, that it considered the event to constitute a single "accident" based on the "Limits of Liability" provision in the policy.

After that exchange, Robles accepted the liability limits of the Noojin Policy, and Noojin was released.

On February 22, 2022, Robles filed a civil lawsuit against Gary Wayne Bell and Progressive in the Circuit Court of DeKalb County, Alabama. The state court action remains pending.

On May 4, 2022, Progressive filed this declaratory judgment action against Rickie Alejandro Robles and Brian Bishop. After he was served and failed to timely respond, a default was entered against Brian Bishop. (Doc. 9).

The issue before the court is whether the Noojin (4:10) and Bell (4:16) collisions constitute a single "accident" under the Bishop Policy, and thus, whether the terms of the Bishop Policy limited Progressive's exposure for the accident to a single underinsured motorist benefit.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the lack of genuine issues of material fact. *Id.* at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party shows the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

### III.   DISCUSSION

The only issue before the court is whether the "Limits of Liability" section of the Bishop Policy restricts Progressive's exposure to a single underinsured motorist limit. In other words, the issue is whether the Noojin collision and the Bell collision constitute one accident or two.

If an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy. *Jay v. United Servs. Auto. Ass'n*, 343 So. 3d 18, 21 Ala. 2021) (citing *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991)). But here, the Bishop Policy does not define "accident." So the court must construe the language "according to the meaning that a person of ordinary intelligence would reasonably give it." *Jay v. United Servs. Auto. Ass'n*, 343 So. 3d 18, 21 (Ala. 2021) (quoting *W. World Ins. Co. v. City of Tuscumbia*, 612 So. 2d 1159 (Ala. 1992)).

Progressive says that in Alabama, courts apply a "cause test" to determine the number of accidents that occurred. *See United States Fire Ins. Co. v. Safeco Ins. Co.*, 444 So. 2d 844, 846–47 (Ala. 1983). This test focuses on the "proximate cause" of the collisions. As long as the injuries stem from one proximate cause, there is only one "occurrence." *Id.* at 846. In adopting this test, Alabama rejected an alternative test—the effects test—which examines the number of impacts or injuries. Under the effects test, each impact or injured party is treated as a separate incident.

The problem for Progressive is that even under the "cause" test, there are two separate accidents. The first accident—the collision between Noojin and Robles—was allegedly caused by the negligence of Noojin. The second collision—between Bell and Robles—was allegedly caused by the negligence of

5

Bell. At this stage, the court must construe the facts in the light most favorable to Robles. And under that standard, a jury could find that two distinct causes led to the two collisions.

Progressive says that a "somewhat analogous case" is *Truck Ins. Exchange v. Rhode*, 303 P.2d 659 (Wash. 1956). There, the insured motorist was approaching three motorcycles being driven about 65 feet apart, inches from the opposite side of the road. *Id.* at 660. The insured negligently veered across the center lane and collided with the first motorcycle. *Id.* The insured auto then rotated counterclockwise and collided with the second motorcycle, and then turned further and collided with the third motorcycle. *Id.* Importantly, all vehicles were in continuous motion. *Id.* Despite three distinct "thuds" heard with each impact, the court held there was one accident. *Id.* at 663. The court found that the insured driver's crossing of the center line was the sole, uninterrupted proximate cause, despite three separate collisions. *Id.*

The facts of the *Rhode* case differ from this case in one important respect: the cars here did not remain in continuous motion after the first collision. After Noojin pulled into the path of Robles, causing a collision, the cars came to rest. The Robles vehicle then sat disabled in the middle of the road. About six minutes later, a new, second accident occurred when Bell collided with Robles' vehicle. Robles was in two separate accidents—separated by a period of six minutes.

Progressive also points to *Milford Cas. Insurance Company v. Meeks*, 856 Fed. App'x 270 (11th Cir. Apr. 23, 2021) in support of its position. In *Milford*, a question before the court was whether three collisions constituted a single accident or multiple accidents for the purposes of an insurance policy. *Id.* at 274. There, an initial collision occurred between a tractor trailer and another vehicle. *Id.* at 271–72. A few minutes later, two other vehicles crashed into the overturned truck. *Id.* at 272. The Eleventh Circuit held that these events constituted one accident under the relevant insurance policy. *Id.* at 275. But there, unlike here, the insurance policy defined "accident" as including "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.* at 275. The court found that the inclusion of "continuous or repeated exposure to the same conditions" contemplated the situation at hand: multiple collisions with the same overturned truck. But

here—unlike in *Milford*—the relevant insurance policy does not define "accident." So the court must construe the language of the insurance policy "according to the meaning that a person of ordinary intelligence would reasonably give it." *Jay*, 343 So. 3d at 21 (citation omitted).

Here, there is at least a jury question of whether two independent conditions caused the accidents here. A reasonable juror could find that Noojin's negligence caused the first collision, and six minutes later, Bell's negligence caused the second collision. For this reason, granting summary judgment for Progressive would be improper.

Finally, Progressive says that the accident involved a single proximate cause: "the disabled Robles vehicle in the roadway." (Doc. 16, p. 19). But that cannot possibly be correct. The Robles vehicle was neither disabled nor stuck in the roadway when the first collision between Noojin and Robles occurred. The court finds that two separate accidents occurred.

## IV. CONCLUSION

For these reasons, the court **DENIES** Progressive's motion for summary judgment on all counts (doc. 15). The court will enter a separate order that carries out this ruling.

**DONE** on May 15, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE